TO this writ of error the defendant has plead the statute of limitations, and the plaintiffs have replied, that “ Benjamin Harrison and George Hamilton, two ancestors of some of the plaintiffs, and against whom the decree was pronounced, had departed this life before the rendition of the decree, and that one of the heirs of said Harrison was, at the rendition of the decree, and still is, a feme covert, and another an infant, *154 sind that two of the heirs, of said George . Hamilton: were infants at the date of the decree, and had not attaincd their full age five years before the emanation.of this writ of error, in which they all are joint plaintiffs ” To this replication the defendant in error has demurred.
Under the act of 1796, pmsécuthm of writs of error, where of the1 lain’*' iiíís hfenw are within the saving of the ^fght^of the whole is saved.
Where an erroneous decree for land has been rendered against a man who was dead at the time of its rendition, without the suit’s having been revived, his heirs may, in their own name, prosecute a Writ of error.
2. This decree was rendered before the present statute limiting writs of error was adopted, and must be decided according to the former statute, which receiv-. a construction, as applicable to bases where part of the plaintiffs were disabled, and a part not so, in the casé of Kennedy’s heir's vs. Duncan, Hard. 365. In case, it was held that where a part only of the plaintiffs Were within the saving of the statute, the right of the whole to prosecute the writ was saved ; differing widely from the construction given to the general act limiting actions, by this court. It is very evident, that the two statutes are expressed in terms' different from each other, and that a different construction and different effect may be given to each,, without any inconsistency. As the construction oí' the old statute limiting writs of error, was fixed by the decision alluded to, and the practice of the court has evér since conformed to that decision, we should not feel disposed to depart from it, whatever might be our opinions upon the subject, if the question was new. In this case, therefore, wé conceive that the disability of some of the plaintiffs must save the right of the whole.
3. Hut there is a more new and doubtful question presenting itself, under the circumstances of this case, in opposition to the writ. Those plaintiffs who havfe relied on their disabilities, are not direct parties to the decree, which was rendered alter the death ol their ancestor, without revivor, decreeing to the defendant in error a tract of land. Hence, it is contended, that the decree, as to them', is a nullity, and may be vacated in the court below', by a proper proceeding, and therefore they cannot be allowed to prosecute a writ of error to reverse it.
It will be readily admitted, that the inferior court, if the fact of the death of the parties w'as shown to them by proper proceedings, would be warranted in treating the decree as a nullity, and setting it aside. It will also be admitted, that this court ought not to re *155 ■verse Hie decree, because the parties were dead, until the matter was tried in the court below. But it does not thence follow, that if the judgment or decree is otherwise erroneous, it may not be reversed at
In such case. er,'or. a'decree^ gainst a dead man, cannot ¡^^“fourt 0f appeals; but if the decr^ “ neouSj itis not incumbent on the proceedings in the infehaVgCj°la¿t’to aside ijefore they bring a ,writ of error
the suit of the representatives of the deceased party. The question, whether a party can maintain a error, generally rests upon his direct and certain interest in the thing decreed, and whether he is aggrieved or injured directly by the decree. If the decree in question was to operate exclusively on the person of the deceased ancestor, as there was no such person in esse at the rend itjon of the decree, it might, with pore plausibility, be said, that that the heir could not sustain this writ; but, in this case, the land of the heirs is decreed away, as well as the land of those claiming under their ancestor, and the decree does operate in rein ; for, by the statute of this coiintry, a writ of pos. session may issue on the decree, without first apply-jug to the person ; and thereby not only the land of the heir, but that of others claiming by purchase from the ancestor, and to whom the heir may become r.esponsible to the extent of assets, on the warranty of the ancestor, may be evicted. We, therefore, conceive that the heir has such an interest in this decree against his deceased ancestor, that he pay prosecute his writ of error to reverse it for error apparent on the face o.f the record, and that he is not bound first to apply to the court below, to annul the decree, on showing the fact of the ancestor’s death.
The demurrer must, therefore, be overruled..
The following petition for a re-hearing ivas, presented :
In this cause, after a replication had been several times altered and amended, &c. the court finally gave a vacation to put in a replication, by which the parties would abide. This was done, •, and a demurrer put in, which assigns for special cause of demurrer, that tfie replication is double or quadruple.
There are other questions presented by the special demurrer.
It is respectfully suggested, that the court have not, in the opinion rendered, taken into consideration the questions thus, presented by the special demurrer,,
*156 The defendants, therefore, respectfully ask the court to re-consider the decision rendered, or to grant a re hearing.
HARDLV./or Deft
But, on the ¡8th of December following, the petition was overruled.